**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:08-CR-30234-NJR-3** |
| **TABITHA M. ROBINSON,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Compassionate Release filed by Defendant Tabitha Robinson pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 186). Robinson is serving a sentence of life in the Bureau of Prisons ("BOP") for conspiracy to produce child pornography and conspiracy to transport minors with intent to engage in criminal sexual activity. (Docs. 7, 61).

Robinson, who is now 46 years old, asks the Court to grant her request for compassionate release due to her obesity, hypertension, carpal tunnel syndrome, arthritis, and borderline diabetes, and her belief that the potential side effects of her health make her more susceptible to the COVID-19 virus.

### DISCUSSION

#### A.    Plea Agreement Waiver

Before reaching the merits of Robinson's motion, the Court must first determine whether she waived the ability to bring her motion by the terms of her plea agreement.

Robinson's plea agreement states:

> Defendant is aware that Title 18, Title 28, and other provisions of the United States Code afford every defendant limited rights to contest a conviction and/or sentence. Acknowledging all this, and in exchange for the recommendations and concessions made by the Government in this Plea Agreement, the **Defendant knowingly and voluntarily waives her right to contest any aspect of her conviction and sentence that could be contested under Title 18 or Title 28**, or under any other provision of federal law . . . .

(Doc. 64) (emphasis added). The Government argues that this provision and others foreclose Robinson from seeking relief under 18 U.S.C. § 3582.

In support of its argument, the Government cites to *United States v. Soto-Ozuna*, an unpublished case in which the Seventh Circuit found the defendant waived his right to move under § 3582(c)(2) for a sentence reduction based on Amendment 782 to the Sentencing Guidelines when he agreed not to "seek to modify his sentence . . . in any type of proceeding." *United States v. Soto-Ozuna*, 681 F. App'x 527, 528 (7th Cir. 2017). The Court noted that it will "enforce appellate waivers in plea agreements if the terms of the waiver are express and unambiguous and the defendant knowingly and voluntarily entered into the agreement." *Id.* (citing *United States v. Sakellarion*, 649 F.3d 634, 638–39 (7th Cir. 2011); *United States v. Aslan*, 644 F.3d 526, 534 (7th Cir. 2011)). Because there was no indication the defendant's waiver was not knowing and voluntary, the Court upheld the waiver and affirmed the district court's denial of defendant's motion. *Id.*

The cases relying on *Soto-Ozuna* to deny compassionate release motions based on a plea waiver all share one common fact. The defendants signed their plea waivers *after* the enactment of the First Step Act. *See, e.g.*, *United States v. Egebrecht*, 2020 WL 3510775, at *2-3 (S.D. Ind. June 29, 2020) (defendant signed plea waiver in April 2019); *United States*

*v. Harris-Harden*, 2020 WL 5653404, at *2 (S.D. Ind. Sept. 22, 2020) (defendant signed plea waiver in April 2019); *United States v. Barnett*, 2020 WL 5947013, at *2 (S.D. Ind. Oct. 6, 2020) (defendant "signed his plea waiver on December 26, 2018—several days after the First Step Act was enacted"); *United States v. Cunningham*, No. 3:19-CR-30035-NJR-3, 2021 WL 1561497, at *2 (S.D. Ill. Apr. 21, 2021 (acknowledging that "[s]imilar to the defendants who signed their plea waivers after the enactment of the First Step Act, [defendant] signed his plea waiver in May of 2019").

Here, Robinson's plea agreement, which does not include an express provision barring the filing of § 3582(c)(2) motions, was made *before* the enactment of the First Step Act. *Soto-Ozuna* is also distinguishable from this case. In *Soto-Ozuna*, the defendant waived his right to seek to "modify" his sentence. Here, Robinson's waived her right to "contest any aspect of the conviction and sentence that could be contested under Title 18 or Title 28." A motion for compassionate release does not "contest" a sentence as it was imposed, but rather argues the enumerated or extraordinary factors now warrant a revisiting and modification of that sentence. *E.g.*, *United States v. Monroe*, 580 F.3d 552, 557–58 (7th Cir. 2009) (noting that § 3582(c) is "fundamentally different" from an appeal or collateral attack as it does not seek to "impugn" district court's sentence). As such, the waiver in Robinson's Sentencing Agreement does not appear to foresee a waiver of a motion under 18 U.S.C. § 3582(c). The Government notes that Robinson's Sentencing Agreement does explicitly note certain exceptions to her "waiver of her right to appeal or bring collateral challenges[,]" and argues that the failure to list § 3582(c) among these exceptions should be read as an indication that her rights under that section were waived,

per the canon of *expressio unius est exclusion alterius*. (Doc. 189, p. 14). Because a motion under § 3582(c) does not amount to an appeal or collateral challenge, however, an exception to such a waiver would be unnecessary, and the failure to list § 3582(c) among the listed exceptions does not indicate waiver. Accordingly, the Court finds that Robinson did not waive her right to bring a motion for compassionate release under 18 U.S.C. § 3582(c).

Robinson's waiver is also different than the waiver in *United States v. Bridgewater*, 995 F.3d 591 (7th Cir. 2021). The defendant in *Bridgewater* waived "*the right to seek modification of or contest any aspect of the conviction or sentence in any type of proceeding . . . .*" *Id.* at 593. Accordingly, the Court held the defendant had waived the right to seek modification of any aspect of his sentence, and compassionate release under 18 U.S.C. § 3582(C)(1)(A) is "clearly a form of sentence modification." *Id.* at 595. Furthermore, the defendant waived his right to seek modification of his sentence in 2019, *after* the First Step gave inmates the right to seek modification without the support of the Bureau of Prisons. *Id.* "In other words, this type of modification proceeding was known and available when Bridgewater agreed not to use it." *Id.* The Court also distinguished *Bridgewater* from *United States v. Glasper*, 2020 WL 6363703 (S.D. Ill. Oct. 29, 2020), "where the district court found that an appellate waiver did not foreclose the right to seek compassionate release because it was entered into *before* the First Step Act was enacted." *Id.*[1]

The Court finds that Robinson could not have knowingly waived her ability to

---

[1] Robinson's waiver is similar to the defendant's waiver in *Glasper*. The defendant in *Glasper* waived the "right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law . . . ." *Id.* at *2.

bring a claim under the First Step Act, as that avenue to relief did not yet exist. *See United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) ("Waiver is the relinquishment of a known right. The First Step Act amended Section 3582 and was passed after his sentence, so he could not have waived the rights it contains."); *United States v. Ellerby*, 2020 WL 2395619, at *2 (D. Md. May 12, 2020) (because defendant pleaded guilty in 2016, and "mindful that a waiver agreement 'should be interpreted narrowly against the government,'" defendant did not waive his right to bring a motion under the First Step Act); *United States v. Burrill*, 2020 WL 1846788, at *2 (N.D. Cal. Apr. 10, 2020) (defendant's December 2017 plea agreement could not encompass the relief he sought under the First Step Act, "as he could not have knowingly waived rights that were not in existence, or even contemplated, at the time of his plea.").

Furthermore, as noted by the Northern District of California, "Congress did not intend for federal prosecutors to have the final say on a defendant's request for compassionate release." *United States v. Sembrano*, 2020 WL 3161003, at *3 (N.D. Cal. May 28, 2020). Rather, "when it passed the First Step Act, Congress made courts rather than executive agencies the final arbiters of compassionate release motions." *Id.* While prosecutors participate in the process of evaluating those motions, they are not the final decisionmakers. *Id.* "It is unacceptable for the United States Attorneys' Office to use its favorable position at the plea bargaining table to abrogate a role Congress designated for the courts." *Id.*

For these reasons, the Court finds that Robinson's plea agreement was not a knowing and voluntary waiver of her right to seek a sentence reduction under the

compassionate release provision of the First Step Act. Thus, she is not foreclosed from bringing her motion in this Court.[2]

### B. Consideration of Robinson's Motion

The Government argues that Robinson failed to exhaust her administrative remedies as to her post sentencing rehabilitation claim. (Doc. 189, p. 15). The Court need not address whether Robinson exhausted her administrative remedies because even if the Court assumes that she did, her motion for compassionate release must be denied for the reasons below.

Under Application Note 1(A)(ii) to U.S.S.G. § 1B1.13, extraordinary and compelling reasons for reducing a sentence exist where the defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. While the Court is not bound to follow this definition when a defendant brings suit himself under the First Step Act, it is a guiding principle. As the Seventh Circuit noted in *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020):

> The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of "extraordinary and compelling reasons"; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion within being conclusive.

---

[2] Notably, on March 11, 2022, the Department of Justice issued new guidance directing all United States Attorney's Offices to no longer seek to enforce broad plea agreement waivers that waive the right to file a compassionate release motion. Here the Government failed to update its briefing to mention the new guidance from March 11, 2022. To be safe, the Court provided the above analysis.

Here, Robinson has failed to establish extraordinary and compelling circumstances that warrant granting her motion for compassionate release. Robinson has not provided evidence that she cannot properly care for herself within the correctional facility. Rather, Robinson claims that her obesity, hypertension, carpal tunnel syndrome, arthritis, and borderline diabetes are reasons to grant compassionate release. (Doc. 186). The Government concedes that Robinson suffers from hypertension, but her medical records do not indicate whether she suffers from *pulmonary* hypertension—the only type of hypertension putting an individual at risk to sever illness from COVID-19. *See United States v. Millbrook*, 840 F. App'x 25, 26 (7th Cir. 2021) (noting that while "[defendant's] high blood pressure likely put him at some increased risk from COVID-19, guidance from the Centers for Disease Control and Prevention did not indicate that high blood pressure (in contrast to 'pulmonary hypertension') was a significant risk factor").

The Government also points out that Robinson was obese in December 2020 with a BMI of 34.8. (Doc. 189). Even if Robinson is still obese, obesity is simply not enough. The Court acknowledges that COVID-19 is a serious and extremely contagious illness that has presented unprecedented challenges for the BOP, but "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease." *United States v. Sheppard*, 2020 WL 2128581, at *2 (C.D. Ill. May 5, 2020). Also, there is "nothing in the medical records to support a finding of borderline diabetes." (Doc. 189, p. 18).

Even if the Court were to find that Robinson's medical conditions, alone or in conjunction with the COVID-19 pandemic, constituted extraordinary and compelling

reasons for release, the § 3553(a) factors and requirement that a defendant not be "a danger to the safety of any other person or to the community" weigh against releasing her. "[W]hile incarcerated, Robinson continues to disobey the rules and regulations, racking up five violations during her time in prison, including two for tattooing/self-mutilation, one for unauthorized physical contact, and one for engaging in sexual acts." (Doc. 189, p. 21). Setting aside her poor behavior while incarcerated, Robinson was involved in the victimization of her own minor child. Releasing Robinson now, 13 years into her life sentence,[3] would fail to provide just punishment for offense, promote respect for the law, or protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a).

For these reasons, the Motion for Compassionate Release filed by Defendant Tabitha Robinson (Doc. 186) is **DENIED**.

**IT IS SO ORDERED.**

DATED:  March 31, 2022

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

---

[3] Robinson was sentenced to a term of life imprisonment. *See* https://www.bop.gov/inmateloc/ (last visited Mar. 29, 2022).